# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**PRINCE A. LINTON,**

    **Plaintiff,**

v.                                                          **Civil Action No. 1:07cv72**
                                                                   **(Judge Keeley)**

**EDMUND J. ROLLO,**
    **Defendant**

## OPINION/REPORT AND RECOMMENDATION
### I. Procedural History

The *pro se* plaintiff initiated this case on May 29, 2007 by filing a civil complaint against the Defendant therein alleging two causes of action: breach of contract and trespass On June 22, 2007, the plaintiff was granted permission to proceed as a pauper.

On November 15, 2007, the undersigned issued an Order, directing the plaintiff to file proof of the amount in controversy. On November 29, 2007, the plaintiff responded to the Order, filing a Memorandum in Response with the Court. Consequently, on December 4, 2007, the undersigned conducted a preliminary review of the file and determined summary dismissal was not appropriate at that time. Thus, the Clerk was directed to issue summonses and forward copies of the compliant to the United States Marshal Service for service of process.

On January 2, 2008, the defendant filed a Motion to Dismiss. A <u>Roseboro</u> Notice was issued two days later.

On January 28, 2008, the plaintiff filed a Response to the defendant's Motion to Dismiss.

On February 4, 2008, the defendant filed a Reply to the plaintiff's Response.

This case is before the undersigned for a Report and Recommendation on the defendant's Motion to Dismiss.

## II. The Pleadings

### A. The Complaint

On May 29, 2007, the plaintiff, a federal inmate currently incarcerated at the Federal Correctional Institution ("FCI") Elkton, Ohio, filed this *pro se* complaint alleging breach of contract and trespass against the defendant. In his complaint, the plaintiff asserts that defendant breached the contract entered into with the plaintiff to specifically enter an appearance for the plaintiff in his 28 USC 2255 federal habeas case. Plaintiff further asserts that defendant failed to file any papers in the court. Additionally, plaintiff asserts that defendant's alleged omissions created an action in trespass because the defendant's alleged failure to file motions enhanced the plaintiff's prison sentence by fifty-two months. Because of these claims, plaintiff seeks $75,000 for assumpsit, $2,500 for trespass and $1.00 in punitive damages for the defendant's alleged omissions and malfeasance.

According to the complaint, on October 5, 2006, the plaintiff contacted the defendant, a licensed attorney, for the purpose of entering an appearance in plaintiff's pending habeas corpus proceeding. After numerous contacts between the defendant, the plaintiff and the plaintiff's surrogates, an agreement was reached by the parties[1]. On December 12, 2006, plaintiff's cousin, Mrs. Tielesha McClurkin, paid the defendant the sum of $2,500.00 for services agreed upon by the parties.

On February 12, 2007, the defendant sent a letter to the plaintiff that analyzed his pending habeas corpus claim. Plaintiff asserts that this analysis should have been sent to the Court. On

---

[1] The exact terms of the agreement are under dispute. Plaintiff contends that the agreement was for the defendant to conduct an analysis of the plaintiff's habeas claims and to appear as his counsel in a pending habeas proceeding. Defendant contends that the agreement was for the defendant to only conduct an analysis fo the plaintiff's habeas claims. However, for the purpose of this report, this issue need not be further addressed.

2

March 23, 2007, the Court denied plaintiff's pending habeas corpus petition.

On April 5, 2007, plaintiff sent the defendant a letter demanding a refund of plaintiff's money for the defendant's alleged failure to perform. Additionally, the plaintiff asked for a $75 "courtesy fee" for any miscellaneous expenses incurred. On May 3, 2007, the defendant sent a letter to plaintiff's friend, Ms. Kellie Baker, informing her that he spent twenty hours on the plaintiff's case and that no money was due. Because of the defendant's refusal to reimburse, the plaintiff initiated this action before this Court.

## B. The Defendant's Response

In his motion, defendant asserts that the plaintiff's case falls outside the Court's jurisdiction. Defendant asserts that the actual amount of controversy fails to meet the $75,000 threshold needed for diversity jurisdiction. Defendant states that the actual amount of damages is $2,500 for the alleged breach of contract, not the inflated amount of $75,000 prayed for by the plaintiff. Defendant rests his conclusion on the his assertion that West Virginia law does not permit recovery of punitive damages in breach of contract cases. In addition, the defendant also asserts that under West Virginia law, compensatory damages are inappropriate in breach of contract cases  Hence, defendant contends that plaintiff can only pray for actual damages. Because actual damages are below the threshold needed to establish diversity jurisdiction, the defendant requests that this action be dismissed.

Additionally, the defendant asserts that the plaintiff lacks standing to bring the present action. Defendant contends that because plaintiff's family paid for the legal services, the plaintiff has no property right to the amount in dispute. Because the plaintiff lacks a property right, he can not claim to "possess" the money. Thus, the plaintiff cannot establish the first element of a trespass claim,

3

namely possession of the property. Because the plaintiff cannot establish the first element of trespass, the defendant request that this action be dismissed.

### C. The Plaintiff's Reply

In his response, the plaintiff asserts that this Court does have diversity jurisdiction. Plaintiff asserts that the law does not limit the amount of compensatory damages based on a breach of contract as long it is pleaded in good faith. Therefore, plaintiff believes he is entitled to the full amount of $75,000 instead of the exchanged amount of $2,500. Additionally, plaintiff asserts that the money exchanged originally was in his possession; the plaintiff' surrogates merely withdrew the money from his account and paid the defendant. Hence, plaintiff contends that he has established the needed elements of trespass. Furthermore, plaintiff asserts that even if he has not, such a deficiency would not effect the jurisdictional question.

### D. The Defendant's Reply

In his reply, defendant asserts that the plaintiff has not met his burden regarding jurisdiction. Defendant points out that the plaintiff cites to no West Virginia case law allowing for compensatory or punitive damages in a breach of contract case. Because the plaintiff has the burden of establishing jurisdiction and has failed to do so, defendant asserts that the plaintiff's case should be dismissed.

### III. Standard of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the well-pleaded material factual allegations. Advanced Health Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the

allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.      Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth or limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the nonmoving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue at trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere

5

allegations of denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is properly only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

#### A. Jurisdiction

In order for this Court to hear and decide a case, the Court must, first, have jurisdiction over the subject matter of the litigation. Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and federal statute, Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986), which is not to be expanded by judicial decree. *See* American Fire & Casualty Co. v. Finn, 341 U.S. 6 (1951). It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction. *See* McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-83 (1936). The two most commonly recognized bases for federal court jurisdiction are (1) "federal question," 28 U.S.C. §1331, and (2) "diversity of citizenship." 28 U.S.C. §1332. Another basis for federal court jurisdiction is pendant or supplemental claim. 28 U.S.C. §1367.

According to Linton, the Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332. 28 U.S.C. §1332 (a) provides that the district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) and is between citizens of different states. The diversity statute, 28 U.S.C. §1332(a), requires complete diversity of parties. Complete diversity of parties in a case means that no party on one side may be a citizen

of the same state as any party on the other side. *See* <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 372-74 (1978).

In the present action, it is clear that both defendants currently reside in different states.[2] However, what is not clear is the amount of the damages in controversy. Plaintiff contends that the amount in controversy exceeds the threshold of $75,000.00. In contrast, defendant contends that the amount of damages should only include the $2,500.00 contract price, and not any punitive or compensatory damages. Based on the following analysis, plaintiff has failed to meet the requirements for jurisdiction and the defendant's motion to dismiss should be granted.

B. **<u>Punitive Damages</u>**

In his complaint, plaintiff asks for $1.00 in punitive damages stemming from the tortuous nature of the breach of contract. Under West Virginia contract law, punitive damages "although generally not available in an action for breach of contract, may be permitted with a showing that the actions of the defendant were tortuous." <u>See</u> <u>Berry v. Nationwide Mutual Fire Ins. Co.</u>, 181 W.Va. 168 (1989). In <u>Boyer v. Hi-Land, Inc.</u>,[3] the West Virginia Supreme Court of Appeals stated the standard for the award of punitive damages:

> "Our punitive damage jurisprudence includes a two step paradigm: first, a determination of whether the conduct of an actor toward another person entitles that person to a punitive damage award under

---

[2] Under the Order directing the plaintiff to file financial forms (dckt. 16), the undersigned asked the plaintiff to present proof of his residence. In his response to the Order (dckt. 18), plaintiff contends that he was and is a resident of Queens, New York. Based on this clarification, it now appears that diversity does exist.

[3] Syl. pt. 9, in part, <u>quoting</u> Syl. pt. 7, <u>Alkire v. First Nat'l Bank of Parsons</u>, 197 W.Va. 122 (1996)

Mayer v. Frobe,[4] 40.W.Va. 246 (1895); second, if a punitive damage award is justified, then a review is mandated to determine if the punitive damage award is excessive under Garnes v. Fleming Landfill, Inc., 186 W.Va. 656 (1991).

Therefore, under Mayer, in the absence of a tortuous action, the plaintiff cannot be awarded punitive damages.

Furthermore, this Court has stated that West Virginia state law does not allow the awarding of punitive damages in contract actions. In McClure v. Elmo Greer & Sons of Ky., LLC, 369 F. Supp 2d 832, the landowner sued the contractor, claiming breach of contract in allowing the contractor to deposit fill from a construction project on the landowner's property, and bringing tort claims of fraud, misrepresentation and outrageous conduct. Id. at 834. The landowner's tort claims were based on his allegations that the defendant perpetrated an international, fraudulent scheme to avoid paying him the monies due pursuant to the contract. Id. In quoting the West Virginia Supreme Court of Appeals, this Court stated:

> Tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by the law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation. *An action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract.*[5]

---

[4] In Mayer, the West Virginia Supreme Court of Appeals stated:

> In actions of tort, where gross fraud, malice, oppression or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.

[5] Lockhart v. Airco Heating & Cooling, 211 W.Va. 609, 614 (2002)(emphasis added).

This Court went on to note that the fraudulent scheme alleged by the McClure plaintiff stems directly from the defendant's alleged omission to perform a contract obligation, and not from any independent duty it had to the plaintiff or the public at large. Id. at 839. Therefore, plaintiff's case concerning the tortuous breach of contract claim was dismissed.

In the present case, the plaintiff seeks $1.00 in punitive damages arising out of the defendant's alleged tortuous omissions and malfeasance in breach of the parties' contract. It is clear from the facts pleaded in the complaint that absent the contractual relationship between the parties, the plaintiff would have no cause of action against the defendant. The plaintiff pleads no other facts that would justify the request of punitive damages outside the breach of contract claim. Hence the case law is clear: an action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract. See Lockhart v. Airco Heating & Cooling, 211 W.Va. 609, 614 (2002). Because the plaintiff can show no independent tort basis outside the existence of the contract, punitive damages are not warranted.

## C. Compensatory Damages

In West Virginia, "it is a fundamental principle of the law of contracts that a plaintiff is only entitled to such damages as would put him in the same position as if the contract had been performed . . . . Milner Hotels, Inc. v. Norfolk & Western Ry. Co., 822 F. Supp 341, 344-345 (S.D.W.Va. 1993). Hence, "a plaintiff is not entitled to damages beyond his actual loss attributable to defendant's breach." Id.

In Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro, 158 W.Va. 708 (1975), the West

Virginia Supreme Court of Appeals authorized two categories of damages in breach of contract cases. The first is those directly flowing from the contract breach. Id. at 716. As to these damages, the Court noted that the parties must have actually anticipated the damages because they are a natural consequence of the breach. Id. The second category is indirect or consequential damages that arise from the special circumstances of the contract. Id. In order to recover these damages, the plaintiff must show that at the time of the contract the parties could reasonably have anticipated that these damages would be a probable result of a breach. Id.

Prior to Sellaro, the West Virginia Supreme Court of Appeals did recognize consequential damages for breach of contract cases. Lewis v. Welch Wholesale Flour & Feed Co., 96 W.Va. 694 (1924). In Lewis, the Court permitted a lessee who had been denied the occupancy of the leased premises to recover damages, which included the rent for storage of his goods and for damage to the goods because of dampness in the storage area. Id. at 699. The evidence showed that warehouse space in the local area was virtually nonexistent, and this circumstance was known to both parties. Id. at 698. Both parties also knew that the lessee was in the furniture business and intended to use the leased premises as an additionally warehouse. Id.

Additionally, Sellaro cites Lewis and more importantly, Section 330 of the *Restatement of Contracts* (1932), which is the forerunner of Section 351 of the *Restatement (Second) of Contracts* (1981). Under Section 351,

> (1) Damages are not recoverable for loss that the party
> in breach did not have reason to foresee as a probable
> result of the breach when the contract was made.
> (2) Loss may be foreseeable as a problem result of a breach
> because it follows from the breach
> (a) in the ordinary course of events, or
> (b) as a result of special circumstances, beyond the ordinary

10

course of events, that the party in breach had reason to know.

On review, the record reflects that pursuant to an agreement, plaintiff paid the sum of $2,500.00 for defendant's services. Based on the aforementioned case law, the irrefutable facts clearly show that the plaintiff is entitled to only actual damages. Plaintiff offers two rationales for the damages. First, plaintiff states he is entitled to the inflated amount because "[the defendant] duped, hurt and caused [the plaintiff] to endure not just monetary loss, but loss of hope . . . ." See Response (dckt. 18) p. 3. This argument amounts to nothing more than damages for negligent infliction of emotional distress. The same may also be stated about plaintiff's second rationale. Plaintiff contends that he is entitled to the $75,000.00 because, "the defendant intentionally wanted to put the Plaintiff through hell . . . ." In West Virginia, where the instant contract was executed, an action for negligent infliction of emotional distress is "generally premised on conduct that unreasonably endangers the plaintiffs physical safety or causes the plaintiff to fear for his or her physical safety." Brown v. City of Fairmont , 221 W.Va 542, 569 (2007) (quoting Lipton v. Unumprovident Corp., 10 A.D. 3d 703 (N.Y. App. Div. 2004). No such conduct exists in the pleadings filed by Linton.

However, even when physical injury or fear thereof is longer a pre-requisite to maintenance of an emotional distress action, West Virginia still requires the following four (4) elements: "1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; 2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; 3) that the actions of the Defendant caused the plaintiff to suffer emotional distress; and, 4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could

be expected to endure it." See Brown, 221 W.Va. at 569.

In the instant case, the facts of the record show the defendant advised the plaintiff about his pending habeas case through a twenty-four page detailed memorandum. See Motion (dckt 24) Exhibit A. Moreover, at the end of the letter, defendant cordially invited the plaintiff to further discuss the case with him. Id. Lastly, when the plaintiff and his surrogates demanded the reimbursement of monies, defendant sent a letter to plaintiff's surrogates outlining his work on the case. See Complaint (dckt. 1) p 3, ¶ 16. There is nothing that in any way indicates any intent, actual or reckless, on the part of defendant to inflict emotional distress on plaintiff.

In short, this is nothing more than a claim for breach of contract compensatory damages and those damages are limited to the amount that would be required to put plaintiff in the same position he would have been in had the contract been performed. Those damages do not reach the $75,000.00 jurisdictional limit of this Court and cannot be augmented to reach that jurisdictional amount by extending plaintiff's claims to include punitive damages or negligent infliction of emotional distress damages.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss (dckt. 24) be **GRANTED** and that the complaint be **DISMISSED without prejudice.**

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to

appeal from a judgment of this Court based upon such recommendations. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 1, 2008

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE